ALBERTA M. WORK *et al.*

*v.*

T. L. ROGERSON *et al.*
*and*
JANE P. DRAKE *et al.*

*v.*

T. L. ROGERSON *et al.*

(No. 12276)

Submitted September 15, 1964.     Decided May 4, 1965.

494

*Chauncey D. Hinerman, George Richardson, Jr., Chauncey Browning, Jr.,* for appellants.

*Moore & Moore, Everett F. Moore, Everett G. Cox, W. J. Brennan, Jack S. Francis, Richard A. Warmuth,* for appellees.

CALHOUN, JUDGE:

This case involves two chancery suits instituted in the Circuit Court of Marshall County in 1949 for the purpose of attacking, on the ground of fraud, two judicial sales and conveyances of certain undeveloped coal and mining rights. The two chancery suits involve similar factual situations and similar legal questions and, therefore, they have been consolidated for purpose of the appeal to this Court. The sales were made in 1935 in two suits instituted in 1933 by Everett F. Moore, Commissioner of School Lands for Marshall County, pursuant to laws of this state relating to the sale of forfeited and delinquent lands.

Moore, as Commissioner of School Lands for Marshall County, instituted and prosecuted seven delinquent tax suits

in the Circuit Court of Marshall County, including the two involved in this case. Each of the seven delinquent tax suits involved a large acreage or block of coal ownership and coal mining rights. The several blocks, as designated in the record, are as follows: Whetstone, 1,006.34 acres; Liberty, 12,855.49 acres; Fish, 1,070.45 acres; Faith, 5, 113.07 acres; Rice, 1,608 acres; Denny, 4, 126.95 acres; and Phillips, 7,257 acres. The total acreage of the seven blocks is 33,-037.30 acres. The total assessed valuation was $1,321,492.00, when the delinquent tax suits were instituted. The aggregate purchase price for the seven blocks was $10,800. T. L. Rogerson became the purchaser in every case except that relating to the Whetstone block, which was purchased by Walter A. McGlumphy.

Chancery suits were instituted by the previous owners, their heirs and assigns, to set aside the sales and conveyances in all of such seven cases except those relating to the Faith and Whetstone blocks. Matters in difference in these two cases were compromised prior to the time of the institution of the five chancery suits. By agreement of counsel, all of the five chancery suits were considered and heard together in the circuit court. The two chancery suits involved in this appeal were prosecuted and conducted to final judgment in the trial court under the procedure applicable to such suits prior to the effective date (July 1, 1960) of the West Virginia Rules of Civil Procedure. A demurrer to the bill of complaint was filed in each of the five chancery suits, which demurrers were overruled by the trial court. The action of the court in overruling the demurrer in the Liberty block suit was certified to this Court, with the understanding on the part of the parties and counsel that the action of this Court on such certification should apply to all of the five chancery suits. This Court declined to docket the case certified. This refusal to docket the case certified cannot be considered, either as to the trial court or this Court, as a final adjudication of the question certified. *Hastings* v. *Finney,* 119 W. Va. 301, pt. 1 syl., 193 S. E. 444; *Sweeney* v. *Security Trust Co.,* 116 W. Va. 344, 351, 180 S. E. 897, 901.

Thereafter an answer was filed to the bill of complaint in each of the five chancery suits and a demurrer was filed to each answer. The circuit court overruled the five demurrers to the five answers. Subsequently, all matters in difference in three of the chancery cases were compromised and settled. The result is that only two of the chancery suits are presently before us. They relate to the Denny block and the Phillips block. The Denny block is involved in the chancery suit styled *Drake et al.* v. *Rogerson et al.* The Phillips block is involved in the chancery suit styled *Work et al.* v. *Rogerson et al.*

The Denny and Phillips blocks purchased by T. L. Rogerson were later sold by him to L. T. Heil. Everett F. Moore, who was commissioner of school lands, and who was appointed special commissioner to make the several sales and the consequent deeds of conveyance, was an attorney at law and a member of the Marshall County bar. Walter A. McGlumphy also was an attorney at law and a member of the Marshall County bar. McGlumphy acted as attorney for both Rogerson and Heil.

In the five chancery suits which were instituted to attack the sales and conveyances made in the delinquent tax suits, Moore, Rogerson, Rogerson's wife, McGlumphy and Heil were made defendants. In these five suits, including the two involved in this appeal, the plaintiffs alleged that the decrees of confirmation of sales and the consequent conveyances were induced and made as the result of a fraudulent conspiracy involving Moore, McGlumphy and Rogerson; that Moore was interested in the purchase of the properties sold by him, in violation of Code, 1931, 37-3-25, and also in violation of Code, 1931, 11-10-7, (both of which statutes were repealed by Acts, 1941, Regular Session, Chapter 117 and, as revised, were placed in the Code in a new chapter, designated as Chapter 11A;) that the sales and conveyances should therefore be declared to be void; and that Heil had both actual and constructive notice of the fraud at the time he purchased from Rogerson.

Moore, Rogerson and McGlumphy filed answers to the five several bills of complaint. The plaintiffs filed replica-

tions to all the answers. Rogerson and McGlumphy died subsequently and the pending suits were revived in the names of their personal representatives. Heil also died after the suits were instituted and while they were pending. The suits were revived in the name of Heil's personal representative, who filed answers to the bills of complaint in behalf of Heil's estate.

The two chancery suits involved in this appeal were submitted to the circuit court for final decision upon the pleadings, exhibits and depositions taken in behalf of the respective parties. By a final order entered on October 31, 1962, the order from which the appeal has been granted, the circuit court held that the plaintiffs in the two chancery suits were not entitled to any relief and that the two bills of complaint should be dismissed. In doing so, the trial court prepared a written opinion which was made a part of the record. We are permitted in such circumstances to consider the written opinion to determine the reason or reasons for the trial court's judgment. *Rollins* v. *Daraban,* 145 W. Va. 178, pt. 2 syl., 113 S. E. 2d 369.

The opinion states, as the ground for the trial court's final judgment, that the plaintiffs in the two chancery suits "have no title or litigable interest in the subject matter and therefore, no right to maintain these suits." The trial court held that the title to the real estate in question had become irredeemable in each of the two cases before the commissioner of school lands instituted the suits to subject the properties to sale; that such titles did not thereafter become redeemable; and that the question of irredeemability has become *res judicata.*

The Denny block was returned delinquent for nonpayment of 1928 taxes and at the delinquent tax sale held December 8, 1930, it was purchased by the sheriff in behalf of the state, under the provisions of Code, 1923, Chapter 31, Section 31, subject to the right of redemption from the state auditor within one year under the provisions of Code, 1923, Chapter 31, Section 33. The state, therefore, became the owner of the Denny block by reason of nonpayment of

delinquent taxes. By reason of the provisions of the statute referred to last above, the trial court held that the land became irredeemable at the expiration of one year from the date of the sheriff's sale, and that the plaintiffs have no interest of any sort in the property which would authorize them to maintain the chancery suits.

Title to the Phillips block, on the other hand, was forfeited to the state, under the provisions of Constitution, Article XIII, Section 6, (which has since been amended). The owners of the Phillips block had it assessed, not as a whole, but according to the several undivided interests in the numerous owners. While many of the owners of such undivided interests in the Phillips block paid in full and did not become delinquent in the payment of taxes according to their several undivided interests, other owners of undivided interests failed, over a period of five years, to do so.

William S. Humbert, one of the nonresident owners of the Phillips block, appeared in the delinquent tax suit relating to that property and demurred to the bill of complaint. Humbert, the demurrant, was represented in the case in the trial court and subsequently in this Court by Walter A. McGlumphy. Everett F. Moore appeared as counsel for the state. The trial court overruled the demurrer to the bill of complaint and certified its ruling on the demurrer to this Court. The certification to this Court involved only the question of forfeiture for nonentry. No other question was considered or adjudicated by this Court. In affirming the ruling of the trial court, this Court, in the sole point of the syllabus, stated: "If it is undertaken to assess lands separately by undivided interests therein, or separately by aliquot parts representing the undivided interests, the entire taxes must be paid in order to prevent forfeiture for failure of the owners to charge the land on the land books as required by Section 6, Article XIII of the State Constitution." *State of West Virginia* v. *William D. Phillips et al.*, 115 W. Va. 362, 176 S. E. 233. See also *L. M. LaFollette, Jr.* v. *Nelson*, 113 W. Va. 906, 170 S. E. 168.

The M. A. Hanna Company has, by proper written instruments, agreed with the plaintiffs in the two chancery suits involved in this appeal to pay the costs of the litigation and, if the plaintiffs succeed in obtaining title to the properties, they agree that M. A. Hanna Company shall have an option to purchase the coal and mining rights at specified prices per acre. It is urged in behalf of the defendants that the plaintiffs should be precluded from maintaining the two chancery suits because the contracts with M. A. Hanna Company are champertous in character or, in the alternative, that the contracts are of such nature that the plaintiffs should be denied relief on the basis of the clean hands doctrine. We are unable to agree with this contention.

Common law principles pertaining to champerty have been held by this Court ordinarily not to be consonant with modern statutes and decisions. Such a defense may be invoked in this state only in case of inequitable conduct. *Currence, Executrix* v. *Ralphsnyder et al.,* 108 W. Va. 194, pts. 4 and 5 syl., 151 S. E. 700; 3 M.J., Champerty and Maintenance, Section 2, pages 867-68; 14 C.J.S., Champerty and Maintenance, Section 3, page 357; 14 Am. Jur. 2d, Champerty and Maintenance, Section 1, page 842. We are unable to perceive anything wrongful, inequitable or oppressive about the contracts. They are fair contracts openly made, and based on proper consideration. In any event, the contracts which are alleged to be champertous are not directly involved in these cases. "Maintenance or champerty may be interposed as matter of defense, only in an action or suit based directly on the contract affected by the infirmity of maintenance or champerty." *Irons et al.* v. *Croft Hat & Notion Co. et al.,* 86 W. Va. 685, pt. 2 syl., 104 S. E. 111. "* * * it is the champertous contract and not the right of action itself which the contract avoids and, therefore, defendant cannot avail himself of the champertous agreement as a defense to the action." 14 C.J.S., Champerty and Maintenance, Section 38, page 382. "Strangers to a champertous contract cannot take advantage of it; only a party to it can do so." *"Harrison* v. *Harman et al.,* 85 W.

Va. 538, pt. 1 syl., 102 S. E. 224. To the same effect, see *Harness, Adm'x* v. *Baltimore & Ohio Railroad Company et al.*, 86 W. Va. 284, pt. 9 syl., 103 S. E. 866; *Davis* v. *Settle et al.*, 43 W. Va. 17, pt. 9 syl., 26 S. E. 557.

As stated previously, the trial court held that the real estate involved in these two chancery suits became irredeemable under the provisions of Code, 1923, Chapter 31, Section 33. This same contention is made in behalf of the defendants in this Court. It is contended in behalf of the defendants, however, that the Phillips block, which was forfeited for nonentry, is, in some respects at least, governed by legal principles not applicable to the Denny block.

The plaintiffs, on the other hand, rely upon the language of Code, 1931, 37-3-29, (before repealed in 1941), providing that a former owner, his heirs, devisees or assigns, "of any real estate forfeited for any cause to the State of West Virginia, may at any time during the pendency of the suit for the sale thereof, and before a decree for the confirmation thereof has been made and entered by the court, file his petition therein * * * praying to be allowed to redeem so much only of such real estate as to which the title still remains in the State; * * *." In that connection, the plaintiffs contend that the decrees of confirmation were induced by a fraud perpetrated on the trial court as a consequence of a fraudulent conspiracy involving Moore, McGlumphy and Rogerson, and also because Moore was interested in the sales made by him; that such decrees of confirmation should be judicially determined to be null and void; that, therefore, it should be further determined that, in such circumstances, the two suits instituted by Moore as commissioner of school lands are still pending in the circuit court, the matters therein involved never having been legally and finally adjudicated, no valid decrees of confirmation having been made and entered; and that the former owners, their heirs, devisees and assigns should be permitted to petition the trial court in such suits for permission to redeem pursuant to the statute referred to previously in this paragraph. The trial court did not reach this contention made in behalf of the plaintiffs because of the trial

court's holding that the plaintiffs have no interest in the subject matter which would enable them to maintain the two suits involved in this appeal.

In view of the fact that the sales in the two delinquent land suits were made in 1935, and the fact that these two chancery suits attacking such sales were not instituted until 1949, the defendants contend that the plaintiffs are attacking the sales collaterally and that "any pretended errors" in the delinquent tax suits could have been reached only by appeal to this Court within eight months under the provisions of Code, 1931, 58-5-3 and 4; by bill of review exhibited within eight months under the provisions of Code, 1931, 58-2-2; or by a petition for a rehearing within two years under the provisions of Code, 1931, 56-3-26.

The plaintiffs, on the other hand, contend that the two bills of complaint involved in this appeal should be treated as "original bills in the nature of bills of review," attacking the decrees of confirmation directly rather than collaterally on the ground of fraud in the procurement of such decrees.

This Court has recognized in numerous cases that if a decree has been procured by fraud, it may be assailed and nullified in a suit by an original bill in the nature of a bill of review, though not by bill of review. *Weldon* v. *Callison*, 119 W. Va. 306, pt. 4 syl., 193 S. E. 441; *Meyers* v. *Meyers*, 88 W. Va. 622, pt. 1 syl., 107 S. E. 412; *Kelley* v. *Thompson*, 87 W. Va. 694, pt. 1 syl., 106 S. E. 230; *Law* v. *Law*, 55 W. Va. 4, pt. 1 syl., 46 S. E. 697; *Snyder* v. *Middle States Loan, Building & Construction Co.*, 52 W. Va. 655, pt. 1 syl., 44 S. E. 250; *Slingluff* v. *Gainer*, 49 W. Va. 7, 12, 37 S. E. 771, 773; *Springston* v. *Morris*, 47 W. Va. 50, pt. 1 syl., 34 S. E. 766; *Manion* v. *Fahy*, 11 W. Va. 482, pts. 5 and 6 syl. See also Hogg's Equity Procedure (3d Ed.), Volume 1, Section 247, page 308. After the fraudulently procured decree is annulled, "the court should, in the suit in which it was entered, proceed to decide it upon its merits, as if the annulled decree had never been entered." *Manion* v. *Fahy*, 11 W. Va. 482, pt. 8 syl., and pages 494-95.

The defendants assert that the two chancery suits involved in this appeal were instituted as suits to annul the decrees and deeds as clouds upon the plaintiffs' title, and not as original bills in the nature of bills of review. In line with well settled equity principles, this Court has held that substance governs in such a situation and that a pleading will be regarded as an original bill in the nature of a bill of review, if that is its true import, even though it has been otherwise designated and regarded by the plaintiff. *Meyers* v. *Meyers,* 88 W. Va. 622, pt. 1 syl., 107 S. E. 412; *Kelley* v. *Thompson,* 87 W. Va. 694, pt. 1 syl., 106 S. E. 230; *Silman* v. *Stump,* 47 W. Va. 641, 35 S. E. 833. See also *Weldon* v. *Callison,* 119 W. Va. 306, pt. 4 syl., 193 S. E. 441; *McLanahan* v. *Mills,* 73 W. Va. 246, pt. 5 syl., 80 S. E. 351; *Law* v. *Law,* 55 W. Va. 4, 46 S. E. 697; 30 C.J.S., Equity, Section 661, page 1094.

The bills of complaint in the two chancery suits involved in this appeal specifically allege that the decrees of confirmation entered in the delinquent tax suits are null and void. The prayers of the two bills of complaint specifically ask that the decrees of confirmation entered in the delinquent tax suits be annulled, set aside and held for naught. We believe, therefore, and accordingly we hold that the bills of complaint may properly be treated as original bills in the nature of bills of review by which the plaintiffs may attack the decrees of confirmation entered in the delinquent tax suits on the ground that such decrees were procured by fraud.

The defendants contend that *State of West Virginia* v. *Phillips,* 115 W. Va. 362, 176 S. E. 233, to which reference has been made previously, so far as the Phillips block is concerned, makes applicable the well settled principle stated in the first point of the syllabus of *Mullins* v. *Green,* 145 W. Va. 469, 115 S. E. 2d 320, as follows: "The general rule is that when a question has been definitely determined by this Court its decision is conclusive on the parties, privies and courts, including this Court, upon a second appeal or writ of error and it is regarded as the law of the case." We consider that legal proposition inapplicable to the present

situation. The *Phillips* case involved the delinquent land suit, in which this Court decided only the certified question relating to forfeiture; and it did not involve the present chancery suit relating to the Phillips block in which the issue of fraud is presented for the first time.

The defendants contend that the adjudications of the circuit court in the two delinquent tax suits are final and conclusive as to the "forfeiture" of the two blocks of real estate in question, their irredeemability, and the right of the state to sell; and that such final adjudications by the trial court are conclusive and binding, not only as to matters actually adjudicated but as to all other matters which might properly have been litigated in such suits. In that connection the defendants rely on a well settled principle of law stated in *State ex rel. Queen et al.* v. *Sawyers,* 148 W. Va. 130, 133 S. E. 2d 257, 261; *In re Settlement of the Estate of Frederick F. McIntosh, Sr.,* 144 W. Va. 583, pt. 1 syl., 109 S. E. 2d 153; *In re: The Estate of Amanda Nicholas, Deceased,* 144 W. Va. 116, pt. 1 syl., 107 S. E. 2d 53. We cannot perceive wherein that legal principle is applicable. The issue of fraud was not before the trial court or this Court in either of the two delinquent tax suits. The plaintiffs had neither knowledge nor means of knowledge of the alleged fraud until years after the delinquent land suits had been finally determined. Therefore, the question of fraud was not an issue and could not have been made an issue in such suits.

The right of redemption has been consistently recognized as a substantial right. "The right to redeem is a substantial equity, and a property right that exists as long as legal title remains in the state. * * * . It is subject to the lien of a judgment * * *. Being subject to the lien of a judgment, this right of redemption, to mean anything, must be such a right as could be proceeded against in a judgment lien creditors' suit." *Early* v. *Berry,* 115 W. Va. 105, 111, 175 S. E. 331, 333. The right of redemption has been characterized as "a substantial equity, or property right." *Neal* v. *Wilson,* 79 W. Va. 482, pt. 4 syl., 92 S. E. 136. A former owner of real estate is a necessary party to a delinquent tax suit. *Bennett* v. *Greer Gas Coal Co. et al.,* 127 W. Va.

184, 192, 32 S. E. 2d 51, 56; *Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417, 12 S. Ct. 239, 35 L. Ed. 1063.

The defendants rely upon the one-year provision contained in Code, 1931, 11-10-30 (Code, 1923, Chapter 31, Section 33), which authorized the previous owner of any real estate sold by the sheriff and purchased by the state for nonpayment of taxes to redeem his former title to such real estate "within one year from the sale thereof * * *." On the other hand, the plaintiffs rely on the following provision of Code, 1931, 37-3-29, (Code, 1923, Chapter 105, Section 17,): "The former owner, his heirs, devisees or assigns, of any real estate forfeited for any cause to the State of West Virginia, may at any time during the pendency of the suit for the sale thereof, and before a decree for the confirmation thereof has been made and entered by the court, file his petition therein * * * praying to be allowed to redeem so much only of such real estate as to which the title still remains in the State; * * *." Both of such statutes have existed simultaneously since the early days of this state's history. Both were carried into and reenacted as a part of the Official, Revised Code of 1931. The Court has never found any conflict between the two statutes but has, on the contrary, consistently applied and given full application to the plain provisions of both. The one-year provision relates merely to real estate sold by the sheriff and purchased in behalf of the state for nonpayment of taxes. The other statute refers to real estate owned by the state either by purchase, as stated above, or by forfeiture of title for nonentry. It refers to suits for sale by the commissioner of school lands (prior to the revision and reenactment thereof by Acts, 1941, Chapter 117), whereas the one-year statute relates only to sales by sheriffs.

The defendants rely on the first point of the syllabus of *State* v. *Board et al.,* 111 W. Va. 562, 163 S. E. 57, and yet in the body of the opinion (111 W. Va. at 564-65, 163 S. E. at 59,) the Court clearly recognizes the effectiveness of both statutes. In *McGraw* v. *Rohrbough,* 74 W. Va. 285, 287, 82 S. E. 217, 218, after referring to a sale by the sheriff for delinquent taxes and a purchase by the state, the Court

stated: "The right of redemption from the State expired in one year from the sale, *but again arose on the institution of proceedings by the commissioner of school lands to sell it * * ** ** *. These are the only times given for redeeming title acquired by the State, whether it acquires it by forfeiture or delinquent tax purchase." (Italics supplied.) In *Frantz Coal Land Co.* v. *Ansted National Bank et al.,* 110 W. Va. 46, 49, 156 S. E. 838, 840, the Court stated: "As expressed, in substance, in *McGraw* v. *Rohrbough,* 74 W. Va. 285, 82 S. E. 217, the right of redemption from the state expires in one year from the date of the sheriff's sale, *but arises again* on the institution of proceedings by the commissioner of school lands to sell the land. So that, in the case at bar, the right to redeem must be considered to have been *revived* by the filing of the bill by the commissioner of school lands in March, 1929." (Italics supplied.) In *State* v. *Black Band Consolidated Coal Co.,* 113 W. Va. 872, 876, 169 S. E. 614, 616, the Court stated: "Land purchased by the State at a delinquent sale cannot be redeemed after one year from the sale, except pending a school commissioner's sale as provided in Code, 1931, 37-3-29." In *Shipley* v. *Browning,* 114 W. Va. 409, 411, 172 S. E. 149, 150, the Court stated the same proposition as follows: "Section 17 gives the former owner, his heirs, devisees or assigns, the specific right to intervene and ask for redemption. And this can be done at any time before final decree in a school land suit. *McGraw* v. *Rohrbough,* 74 W. Va. 285, 82 S. E. 217." In the case of *Early* v. *Berry,* 115 W. Va. 105, 109, 175 S. E. 331, 333, the same proposition was reiterated in the following language: "Section 17 of Chapter 105 confers upon the former owner the absolute right of redemption at any time before confirmation of sale." To the same effect, see *Elk Garden Big Vein Mining Co.* v. *Gerstell,* 95 W. Va. 471, 475, 121 S. E. 569, 570, and *Morgan* v. *Pool,* 76 W. Va. 534, syl., 85 S. E. 724. In the present case, therefore, there can be no doubt of the right of the former owners, their heirs, devisees or assigns, to have applied to the court for permission to redeem at any time before the entry of the decrees of confirmation in the delinquent tax suits.

The right of redemption during the pendency of the delinquent tax suit, in accordance with the holdings of cases cited immediately above, was fully recognized in *State of West Virginia* v. *The Farmers Coal Company et al.,* 130 W. Va. 1, 43 S. E. 2d 625. In that case, however, the Court was faced with the fact that, by the 1941 revision, the legislature eliminated the provision for redemption within one year after purchase by the state at a sheriff's sale for delinquent taxes and provided merely for redemption "at any time until such real estate has been sold * * * and the sale confirmed by the circuit court." The Court held, in the light of the revised statute, that a school land commissioner could not institute and maintain a suit to sell land purchased by the state at a sheriff's sale because of the constitutional requirement that the land must have become irredeemable as a prerequisite to the right to maintain such a suit. Consequently the statute was reenacted in 1947 so as to provide again for irredeemability by permitting redemption within eighteen months from the date of purchase by the state. Code, 1931, 11A-3-8, as amended.

The defendants point out that the title of the purchaser at a tax sale and the title of the former owner are separate, distinct and hostile claims. "The title of the purchaser at a tax sale is not the same as that of the owner in whose name the land was sold. They are separate, hostile claims, with no privity between them." *State* v. *Harman,* 57 W. Va. 447, pt. 7 syl., 50 S. E. 828. The defendants claim, therefore, that the title of the former owners has become forfeited because of their failure to keep the property entered on the tax records in their names for tax purposes. "If a tax deed is void, passing no title, and the owner in whose name the land was sold omits to keep the land on the tax books in his own name, his title will be forfeited for five years omission. Payment of taxes in the name of the tax purchaser will not prevent such forfeiture." *State* v. *Harman,* 57 W. Va. 447, pt. 8 syl., 50 S. E. 828; *State ex rel. Mahaffey et al.* v. *Batson,* 128 W. Va. 55, 63, 36 S. E. 2d 497, 502. See also *William James Sons Co.* v. *Hutchinson et al.,* 79 W. Va. 389, 406, 90 S. E. 1047, 1054; *State* v. *West Branch*

*Lumber Co.,* 64 W. Va. 673, pt. 1 syl., 63 S. E. 372; *Simpson et al.* v. *Edmiston et al.,* 23 W. Va. 675, pt. 7 syl. We understand that the cases referred to above involved conflicting claims of title, either between the state and an individual or between individuals. The former owners of the real estate involved in this case do not contest the proposition that the state obtained title to the property in question, in the one case by nonentry and in the other case by purchase in behalf of the state for delinquent taxes. We do not understand that the former owners have ever claimed title since title was obtained by the state. They do not contend that they had title to the property at any time during the pendency of the suits instituted by the commissioner of school lands. They do not contend that they now have or lawfully may be adjudged to have more than a mere right to redeem. The right to redeem continued during the pendency of the two suits instituted by Moore and until the entry therein of decrees of confirmation; and this is true irrespective of whether the former owners did or did not have the property assessed for taxation in their names. Furthermore, we are unable to understand that the defendants can be permitted to raise this question by way of defense because, if there was a forfeiture of title for nonentry, the forfeiture of the title was not to the defendants but rather to the state, where the plaintiffs contend the title remains because of the absence of legal and valid decrees of confirmation.

The defendants rely upon the curative provisions of Acts of the Legislature, Regular Session, 1947, Chapter 160, Section 37, now appearing as Chapter 11A-4-37, Code, 1931, as amended, as follows:

> "All suits now pending in any circuit court for the sale of lands for the benefit of the school fund shall be and are hereby discontinued and dismissed. Any circuit court in which such a suit is pending shall make all necessary orders for such discontinuance and dismissal.

> "All sales, conveyances, and orders or decrees adjudicating title made in any former circuit court suits for the sale of lands for the benefit of the

> school fund are hereby confirmed. Whatever right,
> title or interest the State had in any such lands
> shall be deemed to have vested in the purchaser,
> grantee or transferee thereof. Notwithstanding any
> irregularity, error or mistake in such suit or in the
> tax enforcement proceedings prior thereto, such
> title shall not hereafter be subject to attack. This
> paragraph is enacted in furtherance of the purpose
> and policy set forth in section one, article three of
> this chapter."

Similar provisions have been a part of the statutory law of
this state for many years. Code, 1923, Chapter 105, Section
19. We do not regard this statute as being applicable to
the present case. In our judgment, the delinquent tax suits
were not "pending" in 1947 within the meaning of the stat-
ute; nor do we believe that a decree of confirmation, in-
duced and obtained in consequence of fraud, can be re-
garded as a mere "irregularity, error or mistake" as such
terms are used in the statute. It is a general legal prin-
ciple that fraud vitiates everything it touches. Fraud is
regarded in law with such abhorrence that we cannot con-
ceive that the legislature intended the curative provisions
of the statute to restore complete, unassailable validity to
decrees of confirmation if they were induced and obtained
by fraud.

As we have indicated previously, the effect of the final
judgment of the trial court was an adjudication that the
plaintiffs had not made such a showing as would authorize
the Court to consider whether the decrees of confirmation
were void on the ground that they were induced by fraud,
as alleged by the plaintiffs in their bills of complaint. In
this Court the defendants assert, in effect, that the ruling
of the trial court was correct, not only for the reason as-
signed by the trial court, but also for various additional
reasons discussed in briefs and in oral arguments. We have
deemed it proper and necessary to consider whether the
judgment of the trial court was correct for any of the rea-
sons urged by the defendants in support of that judgment.
"It makes no difference upon what ground the court below
decided the case, or the particular matter complained of,
it is not the reasons assigned upon which the court decided

a question that is to be reviewed, but the action of the court itself; and the question always in the appellate court is, whether the judgment to be reviewed is correct." *Shrewsbury* v. *Miller,* 10 W. Va. 115, pt. 3 syl., *Rollins* v. *Daraban,* 145 W. Va. 178, pt. 5 syl., 113 S. E. 2d 369; *State ex rel. Dandy* v. *Thompson,* 148 W. Va. 263, pt. 5 syl., 134 S. E. 2d 730.

Having considered all the reasons assigned in support of the trial court's ruling that it was not called upon to decide, upon its merits, the question of the validity of the decrees of confirmation, we believe, and accordingly hold, that the judgment of the trial court is erroneous and accordingly the judgment is reversed. Inasmuch as the trial court did not decide whether the decrees of confirmation were induced by fraud as alleged by the plaintiffs, the case is remanded to the trial court for decision of that question and any other questions, not previously decided, which may properly arise upon the pleadings and proof. This Court has held in numerous cases that, in any case before it on appeal, it will not decide nonjurisdictional questions which were not considered and decided in the trial court. *Pettry* v. *Chesapeake and Ohio Railway Co.,* 148 W. Va. 443, pt. 1 syl., 135 S. E. 2d 729; *Sands* v. *Security Trust Co. et al.,* 143 W. Va. 522, pt. 2 syl., 102 S. E. 2d 733; *Reece* v. *Hall et al.,* 142 W. Va. 365, 373, 95 S. E. 2d 648, 653; *In re: The Estate of Amanda Nicholas, Deceased,* 142 W. Va. 80, syl., 94 S. E. 2d 452; *In re Wheeling Steel Corporation Assessment Personal Property Brooke County,* 137 W. Va. 653, 670, 73 S. E. 2d 644, 654; *Rader* v. *Campbell,* 134 W. Va. 485, 489, 61 S. E. 2d 228, 230; *Highland* v. *Davis,* 119 W. Va. 501, pt. 4 syl., 195 S. E. 604; *Bell et al.* v. *Wayne United Gas Co. et al.,* 116 W. Va. 280, pt. 4 syl., 181 S. E. 609; *Cameron* v. *Cameron,* 105 W. Va. 621, pt. 2 syl., 143 S. E. 349; *Nuzum* v. *Nuzum,* 77 W. Va. 202, pt. 3 syl., 87 S. E. 463; *City of Huntington* v. *State Water Commission,* 135 W. Va. 568, 578, 64 S. E. 2d 225, 231; *Cook* v. *Collins,* 131 W. Va. 475, 479, 48 S. E. 2d 161, 163; *Kesler* v. *Lapham,* 46 W. Va. 293, pt. 7 syl., 33 S. E. 289; *Woods, etc.* v. *Campbell et al.,* 45 W. Va. 203, pt. 2 syl., 32 S. E. 208; *Farmers' Bank of Fairmont* v.

*Gould,* 42 W. Va. 132, 137, 24 S. E. 547, 548; *Cobb* v. *Chesapeake & Ohio Railway Co.,* 35 W. Va. 65, 69, 12 S. E. 1097, 1098.

For reasons stated, the final judgment of the Circuit Court of Marshall County is reversed and the case is remanded to that court for such further action, consonant with this opinion, as may be proper.

*Reversed and remanded with directions.*